womblebonddickinson.com



October 16, 2024

Womble Bond Dickinson (US) LLP

50 California Street, Suite 2750
San Francisco, CA 94111

The Honorable William Alsup
San Francisco Courthouse,
Courtroom 12 – 19th Floor
450 Golden Gate Avenue,
San Francisco, CA 94102

t:   415.433.1900
f:   415.433.5530

Carrie Richey
Partner
Direct Dial: 415-765-6240
E-mail: Carrie.Richey@wbd-us.com

Re:   *iCharts LLC v. Tableau Software, LLC*
      Case No. 3:24-cv-03157-WHA

Dear Judge Alsup:

On behalf of Plaintiff iCharts, we submit this discovery letter to request that the Court order Defendant Tableau to comply with its Patent L.R. ("PLR") 3-4(a) document production obligations. Specifically, iCharts requests that Your Honor order Tableau to promptly produce or make available 1) complete source code for each version of each Accused Product released during the damages period in this case (six years prior to the filing of the Complaint through the present), and 2) non-source code technical documents that describe and explain the operation of all of the Accused Products.[1]

**1.      Relevant Facts.**

On August 1, 2024, iCharts served its First Amended Infringement Contentions. iCharts amended its contentions in part to clarify that iCharts accuses all versions of Tableau's Accused Products[2] used, offered and/or sold within the six-year damages period prior to the Complaint.

Tableau's invalidity contentions and PLR 3-4 document productions were due on August 11, 2024. On August 12, iCharts started examining the source code that Tableau made available. On the inspection computer, iCharts found folders named "Current Source Code" and "Tableau 3.5 Source Code". The "Current Source Code" folder did not identify one specific software version or which of the Accused Products it or any of its discrete folders relates to. Whatever products it relates to, it appears only to reflect a portion of the current code version, and not past accused versions.

The "Tableau 3.5 source code" folder and related executables concern source code that was developed prior to the damages period. According to an unofficial blog on Tableau's website, Tableau 3.5 was released on November 14, 2007. Tableau evidently produced this source code as part of its PLR. 3–4(b) disclosures concerning prior art and not as part of its PLR 3–4(a) disclosure

---

[1] iCharts has temporarily halted its source code review pending resolution of this dispute.
[2] The Accused Products are Tableau Public, Tableau Server, Tableau Cloud, and Tableau Desktop.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

October 16, 2024
Page 2



showing how the Accused Products function. Tableau 3.5 source code is thus irrelevant to Tableau's PLR 3–4(a) obligations.

Further, Tableau did not produce *any* non-source code technical documents—no specifications, schematics, flow charts, artwork, formulas, or other documents showing the operation of any aspects or elements of the Accused Products. To date, other than subsequently producing a one-page high level document reflecting only public domain information, the only technical documents that Tableau has made available are the non-product specific current version of its source code. Technical documents explaining how the Accused Products operate almost certainly do exist, however, because they are expressly referenced throughout the source code that Tableau provided.

### 2.     Meet and Confer Efforts.

On August 26, 2024, iCharts sent Tableau a deficiency letter explaining that Tableau failed to meet its PLR 3-4(a) obligations by failing to provide non-source code technical documents and by making available only one current version of its source code that is not categorized on a product-by-product basis. *See* **Exhibit A**. On September 4, 2024, the parties held a meet and confer over video conference and have since exchanged numerous communications in an effort to resolve these issues. In relation to the source code not being broken down by product, Tableau counsel identified a module in the code that purportedly directs the assembly of particular code for a product; however, iCharts informed Tableau that the links are inoperable on a non-networked source code computer and provide no information. Concerning the prior accused versions of the source code that have not been provided, Tableau contends that it has complied with PLR. 3-4(a) because its code base operates substantially the same way, but it was "still investigating whether there are prior versions …. that differ in respects material to this case." **Exhibit B**. As for non-source code technical documents, Tableau initially claimed no such documents existed. **Exhibit C**. iCharts identified specific repositories linked to in the source code as evidence of such technical documents. **Exhibit D.** Tableau then changed its position, conceding such documents do exist, but that extraction of the information is a "tedious and time-consuming process." **Exhibit E**. Tableau has not yet agreed to provide this information (that was due on August 11) and deferred iCharts repeated requests that it fully comply with PLR 3-4(a), necessitating this letter. *Id***.**

### 3.     Tableau Failed To Produce Any Non-Source Code Technical Documents.

Tableau did not produce *any* non-source code technical documents with its PLR 3–4(a) disclosure. Providing some (incomplete and indecipherable) source code does not meet Tableau's PLR. 3–4(a) disclosure requirement as the rule expressly states that Tableau should also make available "**specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements**" of the Accused Products. PLR 3–4(a). *See Cryptography Research, Inc. v. Visa Intern. Service Ass'n,* Case No. C04–04143 JW (HRL), 2005 WL 1787421, at *2, *4 (N.D. Cal. July 27, 2005) ("A more reasonable reading of the rule [3-4] is that [Defendant] must provide enough documentation to sufficiently show the operation of any aspects or elements of an Accused Instrumentality.... [Defendant] is reminded that Rule 3–4 is not limited to 'source code' or 'detailed design-level' information. Rather, Rule 3–4 clearly states that [Defendant] must turn over *'[s]ource code, specifications, schematics, flow*



October 16, 2024
Page 3

*charts, artwork, formulas, or other documentation* sufficient to show the operation of *any aspects or elements* of an Accused Instrumentality identified by the patent claimant…'").

The types of technical documents that iCharts would expect to exist for the Accused Products are identified in **Exhibit A**. Indeed, many such documents are expressly referenced as hyperlinks in Tableau's source code – but none of the Tableau documents that reside at these hyperlinks have been produced. Tableau's unproduced internal documents are necessary to fully understand the code. Internal documentation is necessary to determine how the different code modules interact with each other because the source code files extensively refer to Tableau-specific internal terminologies and concepts.

### 4. Tableau's Source Code Production Is Deficient and Indecipherable.

Tableau's source code was produced in discrete, isolated folders—not by Accused Product. Tableau has provided a folder labeled "Current Source Code." The directories within this folder do not highlight which Accused Products the folder relates to. Tableau has produced no documentation that would explain how the source code is built for each different Accused Product.

Because the source code was produced in discrete, isolated folders, not by Accused Product or version, it is not possible to discern which folders refer to which elements or aspects of the Accused Products and versions of the Accused Products. *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F.Supp.2d 1121, 1122 (N.D. Cal. 2006) ("'sufficient to show the operation' must be accompanied by the tools necessary to allow the receiving party to decipher the documents and discern which documents refer to which elements or aspects of the accused instrumentalities."). Given that the Accused Products have overlapping features, identifying which code module relates to which Tableau product is not possible without further documentation. iCharts explained that none of the files/commands/scripts Tableau's counsel identified in their meet and confer correspondence provided any relevant information because the links only work in Tableau's own software development environment, not on the non-networked review computer. **Exhibit D**.

Moreover, Tableau should have produced each accused version of its source code for each Accused Product. iCharts' infringement contentions specify which versions it accuses of infringement—namely, each version of the Tableau Platform released throughout the entire damages period, which iCharts presently understands to be from version 10.4 through the present (version 2024.2). Not only did Tableau not produce source code on an Accused Product-specific basis, it did not produce the code for any prior accused versions of Accused Products before the current version.[3]

In sum, iCharts requests that the Court order Tableau to 1) produce non-source code technical documentation that explains the operation of each Accused Product, including without limitation documents referenced by hyperlink in the code itself, and 2) provide complete source code for each Accused Product (clearly identified to associate the pertinent code with the pertinent Accused Product), including the code for each version of each Accused Product during the damages period.

---

[3] As a compromise and without a waiver of rights, iCharts proposed that Tableau produce the software version in use at the start of the damages period in 2017. Tableau has not yet done so.



October 16, 2024
Page 4

        Best regards,

        **Womble Bond Dickinson (US) LLP**

        */s/ Carrie Richey*

        Carrie Richey
        Counsel for Plaintiff iCharts LLC