1  RYAN TYZ (CSB NO. 234895)
   ryan@tyzlaw.com
2  ERIN JONES (CSB No. 252947)
   ejones@tyzlaw.com
3  CIARA MCHALE (CSB No. 293308)
   ciara@tyzlaw.com
4  SEAN APPLE (CSB No. 305692)
   sapple@tyzlaw.com
5  UDIT SOOD (CSB No. 308476)
   udit@tyzlaw.com
6  TYZ LAW GROUP PC
   4 Embarcadero Center, 14th Floor
7  San Francisco, CA 94111
   Telephone: 415.868.6900
8
   Attorneys for Defendant
9  Tableau Software, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| iCHARTS LLC, | Case No: 3:24-cv-03157-WHA |
| Plaintiff, | **DEFENDANT TABLEAU SOFTWARE, LLC'S RESPONSE TO REQUEST FOR INFORMATION (DKT. 112)** |
| v. | |
| TABLEAU SOFTWARE, LLC, | |
| Defendant. | |

The Court's questions address a core issue with the patents-in-suit. The supposed technological problem the patents address is retaining interactivity when sending a chart and the solution they provide is to make the charts self-contained, interactive flash objects. But the "invention" boils down to stating that "the interactive chart may be a flash object." Thus, the claims recite the abstract, non-inventive idea of using preexisting Adobe Flash functionality and applying it to charts. Such claims are not patent-eligible.

1. **"Adobe Flash preexisted the claimed invention and constituted prior art."**

This statement is true. During prosecution, the applicant disclosed a reference titled "Flash Charting Software List" from Wikipedia as prior art, and this reference appears as admitted prior art on the cover page of the earliest patent-in-suit. *See* '892 Patent (cover page); *see also* Dkt. 74-12 at 3 (disclosure of "Flash Charting Software List" reference in applicant's Information Disclosure Statement). Further, the patents-in-suit identify Adobe Flash as the foundation for Plaintiff's alleged inventions. *See, e.g.*, '892 Patent at 10:9–10 (referencing "Adobe flash player"); '000 Patent at 8:47–50 (same); '595 Patent at 8:62–63 (same). Plaintiff confirmed in its Complaint, and again at the hearing, that Adobe Flash predates the purported invention. *See, e.g.*, Dkt. 1 ¶¶ 19 (describing code as being "written in flash"), 24 ("FLASH was conventionally used to display multimedia images and videos."); Dkt. 110 at 24:22–24 ("Yeah, Flash was out there."). There is no question that Adobe Flash preexisted the claimed invention and is prior art.

2. **"Adobe Flash had the capability to allow self-contained interactivity on the user's own computer."**

This statement is true. Plaintiff argued that self-contained interactivity was the "leap in technology" disclosed by the patents. Dkt. 110 at 8:17–23, *see also id.* at 8:4–16 (describing supposed technological problem as the inability to send a chart to a user and retain interactivity). But, as discussed below, the patents not only acknowledge, but rely solely on the existing capabilities of Adobe Flash (and programs offering "similar features") to provide the self-contained interactivity of the interactive charts.

The patents-in-suit describe the interactive charts made by the claimed system as standard "flash objects." *See, e.g.*, '892 Patent at 1:65 ("The interactive chart may be a flash object."),

2:37 (same), 2:64 (same), 3:61 (same), 2:12 ("The stored interactive chart may be a flash object."), 4:4 ("The plurality of interactive charts may be flash objects."), 4:14 (same), 18:64–65 (dependent claim where the interactive chart comprises "a flash object."). The patents further confirm that Adobe Flash had all the capabilities needed for self-contained interactive charts because a standard, unmodified Flash player can render them. '892 Patent at 10:7–11 ("The user only requires Adobe Reader (containing Adobe flash player) to execute the code in the flash file. Any electronic document that can play flash can show the interactive charts"); '000 Patent at 8:47–51 (same); '595 Patent at 8:60–65 (same).

The patents also make clear that other preexisting programs "having similar features" to Adobe Flash could also be used to make a self-contained interactive chart, which confirms that the functionality relies on standard, preexisting capabilities. *See* '892 Patent at 10:12–15; '000 Patent at 8:52–55 (same); '595 Patent at 8:66–9:2 (same). For example, the patents state that Microsoft Silverlight could be used because, like Flash, it "*is configured [i.e., has the capability] to create such a file.*" *Id.* (emphasis added).

Thus, the patents make it clear that Adobe Flash was capable of self-contained interactivity on a user's own computer.

### 3. "These interactivities included the functions shown in the function bar 338 in Figure 3."

This statement is true. This conclusion flows from the discussion in the preceding section. Function bar 338 is a part of the patents' interactive charts. *See* '892 Patent at 10:28–30 ("The interactive chart 300 also includes a function bar 338."). As discussed above, the patents-in-suit neither claim nor describe any alleged improvement to Flash's preexisting capabilities; instead, they describe the interactive chart as a generic flash object (*see* '892 Patent at 1:65, 2:37, 2:64, 3:61, 2:12, 4:4, 4:14, 18:64–65) that can be played on a standard Flash player (*see* '892 Patent at 10:7–11). And the statement in the patents that Flash and other preexisting programs "having similar features" had the capability to make self-contained interactive charts specifically references interactive chart 300, which contains function bar 338, in a discussion about Figures 3–7. *See, e.g.*, '892 Patent at 10:28–30, 10:12–15, Fig. 3. Thus, Adobe Flash was capable of self-

contained interactivity, including the functions of function bar 338.

Other disclosures in the patents-in-suit corroborate that Adobe Flash was capable of the functionality of function bar 338. For example, for the audio playback 356 function, the specification contemplates "recording an audio file . . . or uploading an audio file" ('892 Patent at 13:20–25), but nowhere teaches how to enable audio playback, other than to use Flash. *See, e.g.*, '892 Patent at 1:66–67 ("The audio data associated with the audio feature may be stored within the flash object."), 2:4–5 ("The audio feature may include a selectable audio playback button."), 2:14–15 ("The flash object may include audio data that provides the audio interactivity."). Plaintiff also admits that "FLASH was conventionally used to display multimedia images and videos" (Dkt. 1 ¶ 24), which includes audio playback.

Thus, the patents show that Flash was capable of the interactivities shown in the function bar 338 in Figure 3.

### 4. "The words 'client-side,' 'server-side,' and 'rendering' were not used in any claim or any specification in the patents-in-suit."

This statement is true. Neither the specification nor the claims of any patent-in-suit contain the words "client-side," "server-side," or "rendering." *See generally* '892 Patent; '000 Patent; '595 Patent; *but see* '892 Patent at 9:49–54 (using the words "renders" and "rerenders"), 17:10–30 (discussing a general computer system that "may operate in the capacity of a server or a client machine in server-client network environment"), 18:46–52 (using the words "render" and "rerender"); '000 Patent at 8:23–27, 16:66–17:1, 18:35–39 (same); '595 Patent at 8:38–40, 17:23–26 (same).

### 5. The Alleged Invention's Use of Preexisting Adobe Flash Features

The Court is correct that "the supposed invention was simply using Adobe Flash" and applying it to interactive charts to achieve results already within the capability of Adobe Flash. Dkt. 112 at 1–2.

*First*, the patents state interactive charts were well-known at the time of the invention. *See, e.g.*, '892 Patent at 1:17–26 ("Microsoft Excel is typically used to enter data into spreadsheets and sometimes make charts or graphs from that data."), 1:27–44 ("Google offers an online service

1  that allows users to create interactive charts using an interactive chart widget"). Adobe Flash had
2  the capability to produce such charts, which is why the patents-in-suit describe an interactive chart
3  as a generic Flash object (*see* '892 Patent at 1:65, 2:37, 2:64, 3:61, 2:12, 4:4, 4:14, 18:64–65) that
4  can be played by a standard, unmodified Flash player (*see* '892 Patent at 10:7–11). *See also* '892
5  Patent (cover page listing Wikipedia article titled "Flash Charting Software List" as admitted
6  prior art); *see also* Dkt. 74-12 at 3 (disclosure of "Flash Charting Software List" reference in
7  applicant's Information Disclosure Statement); Dkt. 74-15 ("Flash Charting Software List"
8  reference listing preexisting interactive chart software for Adobe Flash). Plaintiff instead argues
9  that the patents are directed to retaining interactivity when sending a chart by making it a self-
10 contained file. *See* Dkt. 110 at 8:4–23 ("[Y]ou could create an interactive chart on a computer;
11 but if you wanted to share it with anybody else on a different computer . . . you had to have the
12 Excel program on your computer . . . If you wanted to send it to your friend and your friend didn't
13 have Excel, he couldn't interact with the chart."); *see also* Dkt. 87 at 6 ("Once the interactive
14 chart was created, it could be downloaded as an interactive self-contained object.").

15       *Second*, the patents' supposed solution to retaining interactivity—making a chart a self-
16 contained file that runs wholly on a user's computer—was also already within the capability of
17 Adobe Flash. As discussed above, the patents contemplate making the charts "self-contained
18 flash files" that require only Adobe Flash so that "[a]ny electronic document that can play flash
19 can show the interactive charts." *See* '892 Patent at 10:7–11; *see also id.* at 10:12–15 (discussing
20 programs with "similar features" to Adobe Flash that were already "configured to create" a file
21 with self-contained interactivity). Plaintiff confirmed that Flash provided the self-contained
22 interactivity in its opposition, stating that "[t]he embedded interactive chart did not require server
23 communication for its interactivity features" because it executed code "written in Flash." *See*
24 Dkt. 87 at 4. The reason the patents just use Flash is simple—the patents did not invent running
25 a flash object on a user's computer but instead just apply the very functionality for which Flash
26 was designed to charts. *See* Dkt. 74-14 at 2 ("Interactivity is achieved through the use of
27 ActionScript, the core language of Flash Player").
28       *Third*, Plaintiff alleges in its Complaint that the patents-in-suit were conceived when the

named inventor "saw webpages with embedded videos and decided to develop interactive charts that would be as easy to embed in websites as videos" (Dkt. 1 ¶ 16) and that "FLASH was conventionally used to display multimedia images and videos" (*id.* ¶ 24). Plaintiff's pleadings therefore admit that Flash was conventionally used to provide interactivity for embedded objects like images and videos, and that the patents-in-suit simply claim this preexisting functionality and limit it to interactive charts.

      Thus, the Court is correct that the supposed invention simply uses preexisting Adobe Flash to run self-contained interactive charts on a user's computer, which Flash was already capable of doing, as made clear by the patents, Complaint, and Plaintiff's admissions at the hearing.

Respectfully submitted,
TYZ LAW GROUP PC

Dated: November 22, 2024

*/s/ Sean Apple*
Sean Apple

Attorneys for Defendant
Tableau Software, LLC