Fabio E. Marino (SBN 183825)
Fabio.Marino@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
1279 Oakmead Parkway
Sunnyvale, CA 94085
Tel:  408-720-3436

Steven M. Levitan (SBN 148716)
Steve.Levitan@wbd-us.com
Christian E. Mammen (SBN 188454)
Chris.Mammen@wbd-us.com
Carrie J. Richey (SBN 270825)
Carrie.Richey@wbd-us.com
Daniel M. Grigore (SBN 347602)
Daniel.Grigore@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Ste. 2750
San Francisco, CA 94111
Tel:  415-765-6240

Attorneys for Plaintiff
iCHARTS LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| iCHARTS LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TABLEAU SOFTWARE, LLC,<br><br>　　　　Defendant. | Case No.: 3:24-cv-03157-WHA<br><br>**iCHARTS' RESPONSE TO REQUEST FOR INFORMATION**<br><br>Complaint Filed:  October 10, 2023<br>Trial Date:     None |

iCharts addresses below the extent to which each of the Court's specific statements in its Request for Information (Dkt. 112) are true.

*1. Adobe Flash preexisted the claimed invention and constituted prior art.*

**Short answer**: Only partly true. Versions of Adobe Flash published before the date of invention of the patents-in-suit (February 2007) pre-existed the invention and constitute prior art, whereas later versions of Adobe Flash did not pre-exist the invention and do not constitute prior art.

*2. Adobe Flash had the capability to allow self-contained interactivity on the user's own computer.*

**Short answer**: Not true. The versions of Adobe Flash published before the date of invention of the patents-in-suit did not allow self-contained interactivity on the user's own computer as required by the asserted claims of the patents-in-suit.

*3. These interactivities included the functions shown in the function bar **338** in Figure 3.*

**Short answer**: Not true. The versions of Adobe Flash published before the date of invention of the patents-in-suit did not include the interactivities in the function bar **338** in Figure 3 of the patents-in-suit.

*4. The words "client-side," "server-side," and "rendering" were not used in any claim or any specification in the patents-in-suit.*

**Short answer**: Only partly true. The words "client-side," "server-side," and "rendering" do not appear verbatim in the claims or specification of the patents-in-suit. However, the words "server", "client", "render" and "re-render" appear in the claims (claims 1, 10 and 14 of the '892 Patent; claim 1 of the '000 Patent) and the specification. The phrases "server side re-rendering" and "client-side re-rendering" appear both in the Complaint and in the briefing of the 101 Motion to describe the new capabilities introduced by the patents-in-suit in comparison to previous approaches. Dkt. 1 ¶¶21,22, 25, 30, 31; Dkt. 87 pp. 4-6, 19, 21.

*The Court is aware that columns nine and ten of the '892 patent specification describe certain interactive features (roughly columns eight and nine of the other patents). But nowhere does the specification state that those features were not already available via Adobe Flash. Thus,*

1 *it is very hard to discern what the specification describes as an improvement over Adobe Flash.*
2 *Rather, it seems the supposed invention was simply using Adobe Flash to produce charts with*
3 *nifty features, already within the capability of Adobe Flash, and to do so wholly on the user's*
4 *computer, again already within the capability of Adobe Flash.*

5       **Short answer:** Not true. The specification, including the portions cited above, describes
6 the features of the invention recited in the claims of the patents-in-suit, not the capabilities of the
7 prior art. The only portion of the specification describing the prior art is entitled "Related Art" at
8 Col. 1, ln. 17-44. (All citations to the specification are made with reference to the '892 Patent,
9 but the same disclosure is also contained in the specifications of the '595 and '000 Patents.) That
10 section of the specification describes the limitations of the prior art, namely the inability to create
11 interactive charts on one computer and shared to another computer where they remained
12 interactive. The rest of the specification, by contrast, describes how the inventors solved this
13 problem. The versions of Adobe Flash that pre-existed the invention did not provide any of the
14 capabilities described in the specification with respect to the embodiments of the patents-in-suit.
15 Those prior versions of Adobe Flash simply provided low-level functions such as drawing a line
16 or detecting a mouse click by the user that could be executed within a browser. Dkt. 87-1 ¶¶31-
17 34. The invention of the patents-in-suit is not the use of Adobe Flash or any other computer
18 programming language, but rather the structure and organization of a computer system that
19 allows interactive charts to be created on one computer (224 in Fig. 2) using a generation module
20 and shared to a second computer (228 in Fig. 2) that does not have the generation module where
21 a user can a) render the interactive chart; b) receive user input and c) re-render the interactive
22 chart using the user input as a parameter. Col. 18, ln. 32-52. This overcame the limitations of the
23 prior art described at Col. 1, ln. 17-44, specifically the inability of the prior art to share the
24 interactive chart from one computer to another, as recited in the claims. To create the
25 functionality described in the specification and recited in the claims Mr. Duncker and Mr. Blythe
26 had to write millions of lines of computer code, some in the Adobe Flash language and some in
27 other programming languages (e.g. JAVA). Dkt. 1 ¶¶17-26. Indeed, the specification makes clear
28 that while one embodiment uses the Adobe Flash programming language (amongst others), the

1 invention can be implemented using other programming languages (e.g. Microsoft Silverlight), Col. 10, ln. 13-16, all of which were considered by the Examiner in granting the patents-in-suit.

**Discussion**

Contrary to Tableau's unsupported assertions in its 12(c) motion, the versions of Adobe Flash that pre-existed the patents-in-suit (i.e. those published before February 2007) did not have the capabilities required by the claims of the patents-in-suit. Dkt. 87-1 ¶¶31-34. As discussed in iCharts' Opposition (Dkt. 87 pp. 21-22), the invention of the patents-in-suit is not the use of Adobe Flash or any other computer programming language, but rather the structure and organization of a computer system that allows interactive charts to be created on one computer using a generation module and shared to a second computer that does not have the generation module where a user can a) render the interactive chart; b) receive user input and c) re-render the interactive chart using the user input as a parameter. Col. 18, ln. 32-52. None of these functions were built-in into Adobe Flash or any other programming language that existed at the time of the invention. Rather, the inventors used Adobe Flash, together with other programming languages (e.g. JAVA), as tools to build the computer system required by the claims of the patents-in-suit. Dkt. 1 ¶24. This was a massive undertaking both in terms of lines of codes (several million) that had to be written from scratch and software development time (over 18 months).

To be clear, Adobe Flash, like other programming languages, provides only low-level functions (e.g. drawing a line from point a to point b, receiving the position of the cursor when a mouse button is clicked) that a skilled artisan can use to write a program that provides complex functions (e.g. drawing a chart). The specification makes clear that the invention is not the use of Adobe Flash, as it specifically teaches that other languages (e.g. Microsoft Silverlight) can be used instead of Adobe Flash to implement the invention. Col. 10, ln. 13-16. Indeed, Adobe Flash was only used by the inventors to implement the graphical user interface portion of the invention, but not other necessary elements, such as the portions of the sharing module that would send the interactive chart from the first to the second computer (those portions were written in other programming languages like JAVA). Dkt. 1 ¶24.

That the versions of Adobe Flash that pre-existed the patents-in-suit did not have the capabilities required by the claims of the patents-in-suit is confirmed by three separate and independent facts the Court should consider in deciding Tableau's motion. First, Adobe Flash appears on the face of the patents-in-suit as potential prior art that was already considered by the Examiner during the prosecution. In addition, the use of Adobe Flash as a tool to write the software required for certain elements of the claims is expressly disclosed in the patent specification. Col. 9, ln. 7-12. Thus, the Examiner was fully aware of Adobe Flash when considering the patentability of the patents-in-suit. Courts have stated that the presumption of validity is stronger in cases where the alleged prior art was considered during prosecution, as is the case here. *Gould v. Gen. Photonics Corp.*, 534 F. Supp. 399, 400, 404 (N.D. Cal. 1982) ("Where the Patent Office has considered the most pertinent prior art before issuing the patent, the presumption of validity becomes even stronger."). Second, Tableau filed IPR petitions on each of the patents-in-suit. Yet, none of Tableau's IPR petitions asserts that any of the versions of Adobe Flash that pre-existed the inventions anticipate or render obvious the asserted claims of the patents-in-suit. *See, generally,* Petitions for IPR2024-01387, IPR2024-01388, and IPR2024-01389. If Tableau had any evidence that the interactive features required by the asserted claims were present in Adobe Flash, it would have certainly presented such evidence to the PTAB, particularly since it agreed to litigate that issue in that venue. Third, as alleged in the Complaint, Tableau was a direct competitor of iCharts, yet did not introduce the patented functionality until years later (after the applications for the patents-in-suit were filed). Dkt. 1 ¶30. Once again, if the interactive features required by the asserted claims were present in Adobe Flash all along as Tableau now contends, Tableau would have introduced them in its products much earlier to compete with iCharts.

The Federal Circuit has repeatedly admonished district courts not to jump the gun and make determinations on patent eligibility without developing an adequate factual background. *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). That is undoubtedly the case here where there are substantial disputes of material fact that need to be resolved to determine what was conventional or not.

To iCharts' knowledge, no court has ever held that a programming language renders patent ineligible all software inventions written in that language, as Tableau argues in this case. To the contrary, the Federal Circuit has held that even when all the components of a software invention are individually present in the prior art, the court must consider whether the combination of those known elements was conventional or not. *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Here, the specification does not establish that the versions of Adobe Flash that pre-existed the invention contained either the required elements of the claims individually, much less in the combination required by the asserted claims. As a result, determining which of the requirements of the claims were in the prior art and which were not is a fact intensive inquiry that will require both discovery and expert analysis that is not before the Court on Tableau's Rule 12(c) Motion. iCharts provided an expert declaration as part of its Opposition to illustrate the key factual disputes the Court will have to resolve once an adequate factual record is developed.

    iCharts has explained in its Opposition how the patents-in-suit are drawn to a specific solution to a problem in the underlying technology (allowing interactive charts to be shared between computers) and not to an abstract idea. Dkt. 87 p. 9. iCharts has also explained how that solution was implemented using non-conventional techniques (allowing the interactive chart to be re-rendered on the second computer based on input received by the user and without having the software used to create the interactive chart on the first computer). *Id*. pp. 20–22. And iCharts supported its position with an expert declaration detailing the factual bases for its positions, a position Tableau has not rebutted. Dkt. 87-1. On this record, it would be erroneous to grant Tableau's Rule 12(c) motion without proper consideration and resolution of the underlying factual disputes.

Dated:  November 22, 2024            Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Fabio E. Marino*
Fabio E. Marino
Counsel for Plaintiff
*iCharts LLC*