RYAN TYZ (CSB NO. 234895)
ryan@tyzlaw.com
ERIN JONES (CSB No. 252947)
ejones@tyzlaw.com
CIARA MCHALE (CSB No. 293308)
ciara@tyzlaw.com
SEAN APPLE (CSB No. 305692)
sapple@tyzlaw.com
UDIT SOOD (CSB No. 308476)
udit@tyzlaw.com
TYZ LAW GROUP PC
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: 415.868.6900

Attorneys for Defendant
Tableau Software, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| iCHARTS LLC, | Case No: 3:24-cv-03157-WHA |
| Plaintiff, | **TABLEAU'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES** |
| v. | |
| TABLEAU SOFTWARE, LLC, | |
| Defendant. | Date:            February 13, 2025<br>Time:            8:00 a.m.<br>Courtroom:    12 |
| | Complaint Filed:    October 10, 2023 |

# TABLE OF CONTENTS

Page

I.  FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

    A.  Plaintiff's Predecessor-in-Interest Believed It Had a Claim Against Tableau Long Ago .........................................................................................2

    B.  Mr. Duncker Then Laundered the Asserted Patents Through Bankruptcy..........3

    C.  Plaintiff Fought to Have Its Case Heard in Far-Flung Forum ............................5

    D.  This Court Found the Asserted Patents to be Directed to Ineligible Subject Matter .................................................................................................6

    E.  The Parties Met and Conferred ........................................................................7

II. ARGUMENT .............................................................................................................7

    A.  Tableau is the Prevailing Party ........................................................................7

    B.  This is an Exceptional Case .............................................................................8

        i.  Plaintiff was Judicially Estopped from Bringing Its Claims ...................8

        ii.  Plaintiff Claims Should Not Have Been Brought in Texas ...................11

        iii.  Plaintiff Had Exceptionally Weak Section 101 Arguments .................12

    C.  The Court Should Award Tableau's Reasonable Attorneys' Fees ....................13

        i.  Tyz Law Group's Rates Are Reasonable................................................13

        ii.  Tyz Law Group's Hours Spent Are Reasonable....................................14

        iii.  The Court Should Hold Mr. Duncker Jointly and Severally Liable .......14

III. CONCLUSION...........................................................................................................15

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**CASES**

4

*Barnes & Noble, Inc. v. LSI Corp.*,
    849 F. Supp. 2d 925 (N.D. Cal. 2012) ................................................................ 11

5

*Cannon-Stokes v. Potter*,
    453 F.3d 446 (7th Cir. 2006) .............................................................................. 10

6

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778 (9th Cir. 2001) .......................................................................... 8, 10

7

8

*Hay v. First Interstate Bank of Kalispell, N.A.*,
    978 F.2d 555 (9th Cir.1992) ............................................................................... 10

9

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................................................... 14

10

11

*In re Coastal Plains, Inc.*,
    179 F.3d 197 (5th Cir. 1999) ................................................................................ 8

12

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017) .......................................................................... 12

13

14

*Iris Connex, LLC v. Dell, Inc.*,
    235 F. Supp. 3d 826 (E.D. Tex. 2017) .......................................................... 14, 15

15

*LG Elecs. Inc. v. Q-Lity Comp. Inc.*,
    211 F.R.D. 360 (N.D. Cal. 2002) ....................................................................... 14

16

17

*Machinery Corp. of America v. Gullfiber AB*,
    774 F.2d 467 (Fed. Cir. 1985) ............................................................................ 15

18

*Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.*,
    No. 21-CV-06536,
    2022 WL 1289048 (N.D. Cal. Apr. 29, 2022) .................................................. 13

19

20

*Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*,
    No. 21-CV-06536,
    2024 WL 3697030 (N.D. Cal. Aug. 6, 2024) ................................................... 13

21

22

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000) ........................................................................................... 15

23

24

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ........................................................................................... 10

25

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ............................................................................................. 8

26

27

*Ohio Cellular Products Corp. v. Adams USA, Inc.*,
    175 F.3d 1343 (Fed. Cir. 1999) .................................................................... 14, 15

28

*Wynn v. Chanos*,
    No. 14-CV-04329,
    2015 WL 3832561 (N.D. Cal. June 19, 2015) ................................................................. 13

**STATUTES**

11 U.S.C. § 521 .................................................................................................................... 8

35 U.S.C. § 285 ................................................................................................................. 8, 14

1

### NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on February 13, 2025 at 8:00 a.m. or as soon thereafter as

4

counsel may be heard in the courtroom of the Honorable William Alsup, Courtroom 12 on the

5

19th floor of the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco,

6

CA 94102, Defendant Tableau Software, LLC ("Tableau") will and hereby moves for an award

7

of attorneys' fees incurred in prosecuting this lawsuit under 35 U.S.C. § 285.

8

This Motion rests on the Notice of Motion and Motion, the Memorandum of Points and

9

Authorities, the Declaration of Ryan Tyz and Exhibits thereto, other previously filed documents

10

in this action, the Court's files, the arguments of counsel, and any other matter that the Court may

11

properly consider.

12

### ISSUES TO BE DECIDED

13

1.    Whether the Court should grant Tableau its reasonable attorneys' fees under 35

14

U.S.C. § 285.

15

2.    Whether the Court should join Seymour Duncker to this case and hold him and

16

Plaintiff jointly and severally liable for those fees.

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

This is an exceptional case that warrants awarding Tableau its attorneys' fees. First, Seymour Duncker—the CEO of Plaintiff's predecessor-in-interest Old iCharts and current principal of Plaintiff New iCharts—knew about the potential patent claims against Tableau many years ago. But he failed to disclose them as required in Old iCharts' bankruptcy proceeding so that he could get the Asserted Patents for free and then his new company could sue Tableau in this case claiming hundreds of millions in damages. Plaintiff, as a successor-in-interest, was therefore judicially estopped from bringing these claims. Second, Plaintiff should never have brought this case in Texas and unreasonably opposed transfer to this District. Mr. Duncker, Old iCharts and Tableau are all in Northern California and no factor supported maintaining this case in Texas. Third, Plaintiff presented exceptionally weak arguments in opposing Tableau's motion for judgment on the pleadings. Tableau prevailed. Plaintiff's litigation tactics have only served to increase fees and costs to Tableau. The Court should now award Tableau's attorneys' fees and add Mr. Duncker as a party to this case and hold him jointly and severally liable for the fees because his actions made this case exceptional.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Predecessor-in-Interest Believed It Had a Claim Against Tableau Long Ago

Seymour Duncker was the founder of Plaintiff's predecessor-in-interest, iCharts, Inc. ("Old iCharts"). Dkt. 1 (Compl.) ¶ 16. According to him, Old iCharts and Tableau were competitors. *Id.* ¶ 29. Old iCharts was founded in 2008 (*id.* ¶ 13), and by July of the same year began applying for the Asserted Patents to monopolize the idea of interactive charts. *Id.* ¶¶ 13, 33. Mr. Duncker is the first-named inventor on each Asserted Patent. Dkt. 1-1 to 1-3.

Plaintiff alleged that Tableau "adopted iCharts' underlying architecture" at the beginning of 2010. Compl. ¶ 30. Mr. Duncker and Old iCharts were aware of Tableau products by at least 2013 and their sales team "conducted competitive product analysis that included the Tableau Products." Tyz Decl., Ex. 9 at 16.

Plaintiff's entire basis for claiming that Tableau's alleged infringement was willful was

certain communications between Mr. Duncker and Tableau in 2013 and 2017.  *See* Tyz Decl., Ex. 11 at 3–7; Compl. ¶¶ 62, 71, 81, Prayer ¶ d.

In a 2013 email with a Tableau employee, Mr. Duncker stated that he

████████████████████████████████████████████████████████

Tyz Decl., Ex. 7 at -767 (emphasis added).

Plaintiff alleged that Old iCharts and Tableau then "discussed a potential acquisition" in 2017, which "made Tableau aware of [its] patent portfolio including the Asserted Patents." Compl. ¶ 32.  Plaintiff claims that

> Tableau was aware that iCharts, Inc. was a competitor with similar subscriptions and services offerings (an iCharts Inc. representative explained how iCharts Inc.'s subscriptions and services offerings worked) that were covered by iCharts, Inc.'s patents.

Tyz Decl., Ex. 11 at 5.  Plaintiff further alleged that, through these 2017 communications, "Tableau has been on notice of the Patents-In-Suit since at least as early as 2017." *Id.*  Eliminating any doubt that Seymour Duncker and Old iCharts recognized their claims in 2017, Plaintiff admits that, no later than July 18, 2017, "as part of regular competitive analysis, Seymour Duncker, then with [Old iCharts], became aware that at least some of Tableau's products had the same or substantially similar architecture as claimed in the Patents-in-Suit."  Tyz Decl., Ex. 8 at 6.

**B.     Mr. Duncker Then Laundered the Asserted Patents Through Bankruptcy**

A year later in April 2018, Old iCharts filed for Chapter 7 bankruptcy in this District.  Tyz Decl., Ex. 12.  Mr. Duncker was the authorized representative of Old iCharts and affirmed, under penalty of perjury, that the bankruptcy petition was correct.  *Id.* at 4.  Old iCharts listed its software and the Asserted Patents as assets in the bankruptcy with a value of "$0":



*Id.* at 13 (highlighting added).  Despite having already identified Tableau as an alleged infringer—and allegedly having placed Tableau on notice of it—Old iCharts opted not to disclose any possible claim of infringement against Tableau in its bankruptcy petition:

*Id.* at 14 (highlighting added).

Nonetheless, during the bankruptcy, Mr. Duncker made multiple offers to personally purchase the allegedly worthless Asserted Patents.  Tyz Decl., Ex. 14 at 3, Ex. 15 at 2.  The Bankruptcy Trustee rejected his offers.  The Trustee told Mr. Duncker that he was "not running a 'bazaar'" and informed the bankruptcy court that he disallowed the sale because it was both improper and because "Mr. Duncker's primary goal is to acquire the remaining assets of the Debtor's estate on the cheap."  Tyz Decl., Ex. 14 at 3, Ex. 15 at 2.  The Trustee only allowed Mr. Duncker to purchase Old iCharts' *software* in partial settlement of an action the estate brought to claw back funds that the failing company had paid to Mr. Duncker's wife less than 90 days before the bankruptcy filing.  Tyz Decl., Ex. 13.  Mr. Duncker ultimately addressed his request to purchase the Asserted Patents directly to bankruptcy court, which summarily denied the request as "contrary to the administrative process of a Chapter 7 case."  Tyz Decl., Ex. 16.  After the bankruptcy court prevented the sale of the patents to Mr. Duncker, the bankruptcy case closed, and the Asserted Patents stood abandoned by the estate as worthless. *See* Tyz Decl., Ex. 17 at 16, Ex. 18.

But once Old iCharts and Mr. Duncker were liberated from their debts, Mr. Duncker put into action his scheme to "fully exploit" the Asserted Patents, including the potential claims against Tableau that he concealed from the Trustee. *See* Dkt. 45-26 at 4. Mr. Duncker, as Old iCharts' CEO, first assigned the Asserted Patents to his wife Valerie Duncker (acting as manager of a company called iChasoco LLC). *See* Tyz Decl., Exs. 1–3 (assignments), Ex. 11 at 10–13. Then, just a week later, Ms. Duncker's company assigned the patents over to Plaintiff— iCharts LLC ("New iCharts"), which from inception Mr. Duncker owned and operated. Tyz Decl., Exs. 4–6 (assignments), Ex. 11 at 10–13; Dkt. 45-28 ¶ 1 (March 22, 2024 Declaration of Seymour Duncker, stating "I am a principal of iCharts, LLC").

Plaintiff then filed this action against Tableau in Texas, asserting three of the eight patents that Mr. Duncker told the Bankruptcy Court were worthless. Plaintiff sought damages in this action, plus willfulness enhancements, from October 10, 2017 (six months before Old iCharts filed for bankruptcy) that Plaintiff estimated to be between $250 million and $375 million. Tyz Decl., Ex. 10 at 12.

### C. Plaintiff Fought to Have Its Case Heard in Far-Flung Forum

Mr. Duncker resides in NDCA. Dkt. 61 at 2. Old iCharts was founded in NDCA and remained in NDCA until it filed for bankruptcy in NDCA. *Id.* Tableau was founded in NDCA, has its engineering staff in NDCA and Seattle, and was acquired by NDCA-based company Salesforce in 2019, before this suit. Dkt. 61 at 3.

Yet Plaintiff filed this case in WDTX on October 10, 2023. *See id.* And when Tableau filed a motion to transfer the case to NDCA, demonstrating this suit's clear center of gravity in NDCA, Plaintiff opposed it vigorously. Dkt. 29. Plaintiff argued that it could not have brought this case in NDCA because venue was improper, but filed in WDTX with even less of a basis for venue. *See* Dkt. 45 at 3–8; Dkt. 61 at 9–13. Plaintiff also filed numerous related pleadings, including motions to extend time (Dkt. 30), for expedited venue discovery (Dkt. 31), to exceed the page limit (Dkt. 35), and to strike Tableau's reply and related evidence (Dkt. 57).

Even while opposing the motion to transfer, Plaintiff submitted a declaration from Mr. Duncker confirming that he resides in NDCA and is knowledgeable enough to recognize a

potential claim against Tableau. In that declaration, Mr. Duncker testified that, "as principal and co-founder of ICI [Old iCharts], and co-inventor of the patents-in-suit," he was more knowledgeable regarding a wide range of topics than other former employees of Old iCharts. Dkt. 45-28 ¶ 6. For example, Mr. Duncker stated under oath that he knew everything "regarding patent scope of the asserted patents, practicing and/or marketing those patents, or noninfringing alternatives." *Id.* ¶ 6(b). Mr. Duncker emphasized that he was knowledgeable regarding the Asserted Patents because he was an inventor and worked with the prosecuting attorneys. *Id.* ¶ 6(a). Mr. Duncker also stated that he has at least as much knowledge "regarding competitors" as another co-founder of iCharts. *Id.* ¶ 6(a).

On May 21, 2024, Judge Robert Pitman transferred the case from WDTX to this Court, holding that NDCA is "clearly more convenient" than WDTX because "the factors clearly weigh in favor of transfer." Dkt. 61 at 29–30. Judge Pitman found that "the vast majority of the relevant evidence is in NDCA," including "evidence related to the accused products," "records related to the development, prosecution, and commercialization of the Asserted Patents," "the prosecution files for the Asserted Patents," and evidence related to Old iCharts' bankruptcy. *Id.* at 14–18. Judge Pitman further held that transfer was proper because Tableau identified twelve potential non-party witnesses subject to NDCA's compulsory process, including Mr. Duncker himself, along with his wife, one co-founder and four former vice presidents of Old iCharts, the attorneys who prosecuted the Asserted Patents, the bankruptcy trustee for Old iCharts, and at least five corporations who were potential prior art witnesses. *Id.* at 18–22. The Court found that five factors—the ease of access to proof, availability of compulsory process, cost of attendance, miscellaneous practical problems, and local interests—all "weigh[ed] strongly in favor of transfer," while three factors were neutral. Dkt. 61 at 29–30. The Court did not find for Plaintiff on any factor. *Id.*

### D. This Court Found the Asserted Patents to be Directed to Ineligible Subject Matter

After the case was transferred, Tableau filed a motion for judgment on the pleadings under Section 101. *See* Dkt. 74. The Court is no doubt already familiar with this motion and its order

because it was recent and the first substantive order in this case. *See* Dkt. 118 at 3. In short, after briefing, argument, and supplemental briefing, the Court granted the motion in full, holding that all three Asserted Patents were patent ineligible because they claimed abstract ideas and lacked any inventive concept. Dkt. 118 at 3, 24; *see* Dkts. 74, 87, 90, 113, 114. Specifically, the Asserted Patents claimed client-side re-rendering of charts using conventional Adobe Flash technology. *Id.* at 6–7. Plaintiff opposed on the basis that the invention adds functionality; but, it did "not specify what functionality is added and where the specification, let alone the claims, plausibly says so." Dkt. 118 at 7. After supplemental briefing, Plaintiff "remain[ed] unable to point to a single line supporting its view that the inventors improved Adobe Flash or used Adobe Flash in any way unconventionally." *Id.* The Court's Order noted that Plaintiff barely made arguments on several factors and that they arguments that Plaintiff did make were exceptionally weak. *See, e.g.*, *id.* at 8 ("Although iCharts mentions three dependent claims in two sentences, it does not develop arguments based on them"), 10 (Plaintiff's argument "imagines limitations not in the claim or claims" and "misses the point"), 10 (Plaintiff "wholly fails to cite to any particular mechanism in the specification, let alone any in the claim language"), 10 ("This is not a close call"), 13 (Plaintiff "pointed to no contrary citations in the specification or claims"), 15 ("iCharts barely tries to persuade this order otherwise"), 19 ("iCharts does not specify what exactly was 'buil[t] on the concept of publishing'"), 20 ("Rather than specifically analyze the claim elements, iCharts just restates them"), 21 ("iCharts barely mounts a response").

### E.    The Parties Met and Conferred

Pursuant to Civil L.R. 54-5, counsel for Tableau tried to avoid this motion by meeting and conferring with counsel for Plaintiff on the matter of fees. Tyz Decl. ¶ 2. The parties were unable to reach an agreement resolving the motion. *Id.*

## II.    ARGUMENT

### A.    Tableau is the Prevailing Party

Tableau is the prevailing party because the Asserted Patents were patent ineligible under Section 101 and the Court granted Tableau's Motion for Judgment on the Pleadings in full with prejudice. Dkt. 118. The Court may therefore award Tableau its reasonable attorneys' fees if it

finds that this is an exceptional case.  35 U.S.C. § 285.

### B.    This is an Exceptional Case

The Court should award Tableau its attorneys' fees because this is an exceptional case. *See* 35 U.S.C. § 285.  "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  The Court exercises its discretion on a case-by-case basis considering the totality of the circumstances. *Id.*  As discussed below, there are three reasons that make this case exceptional. <u>First</u>, Plaintiff should not have brought this case because it is estopped from asserting its claims against Tableau based on the failure to disclosure those claims in bankruptcy. <u>Second</u>, Plaintiff unreasonably filed this lawsuit in Texas and fought its transfer to this Court, even though none of the convenience factors favored Texas and this District is the home of Mr. Duncker, Tableau, and Old iCharts. <u>Third</u>, Plaintiff's arguments in opposing Tableau's motion for judgment on the pleadings under Section 101 were exceptionally weak.  Each of these circumstances would independently justify finding that this is an exceptional case, and the totality of them leaves no doubt that Tableau was wrongly forced to expend extensive resources defending a meritless lawsuit.

### i.    <u>Plaintiff was Judicially Estopped from Bringing Its Claims</u>

Old iCharts was required to disclose during bankruptcy all possible claims against third parties like Tableau.  The Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities."  11 U.S.C. § 521(a)(1)(B)(i).  This requires a debtor to disclose contingent and unliquidated claims, including potential causes of action against a third party. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir. 1999)).  "The debtor need not know all the facts or even the legal basis for the cause of action." *In re Coastal Plains*, 179 F.3d at 208.  It is enough that the debtor "has knowledge of enough facts to know that a potential cause of action exists." *Hamilton*, 270 F.3d at 784; *see also In re Coastal Plains*, 179 F.3d at 208 (a debtor who has enough information "to suggest that it may have a possible cause of action" must disclose).

Mr. Duncker and Old iCharts knew enough facts underlying the potential claims against Tableau to require disclosure in the 2018 bankruptcy.

First, Plaintiff admitted in discovery that Mr. Duncker and Old iCharts were aware of Tableau products by at least 2013 and that their sales team "conducted competitive product analysis that included the Tableau Products." Tyz Decl., Ex. 9 at 16. And Plaintiff admits that in 2017—a year before Old iCharts filed its bankruptcy petition—"as part of regular competitive analysis, Seymour Duncker, then with [Old iCharts], became aware that at least some of Tableau's products had the same or substantially similar architecture as claimed in the Patents-in-Suit." Tyz Decl., Ex. 8 at 6. These facts alone are sufficient to conclude that Mr. Duncker knew about the potential claims against Tableau.

Second, Mr. Duncker was the first named inventor of the Asserted Patents and in resisting transfer to this District, emphasized that he was knowledgeable regarding the Asserted Patents because he was an inventor and worked with the prosecuting attorneys. Dkt. 45-28 ¶ 6. He testified that "as principal and co-founder of [Old iCharts], and co-inventor of the patents-in-suit," he knew everything "regarding patent scope of the asserted patents, practicing and/or marketing those patents, or noninfringing alternatives." Dkt. 45-28 ¶ 6, 6(a). Mr. Duncker should not be permitted to claim knowledge only when it suits him and feign ignorance when it does not.

Third, Plaintiff's entire basis for its claim that Tableau's alleged infringement was willful was based on communications between Mr. Duncker and Tableau in 2013 and 2017. See Tyz Decl., Ex. 11 at 3–7; Compl. ¶¶ 62, 71, 81, Prayer ¶ d. Mr. Dunker ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Tyz Decl., Ex. 7 at -767. It is inconsistent to allege that these conversations put only Tableau on notice of potential infringement, but not Mr. Duncker or Old iCharts.

Fourth, Mr. Duncker did not disclose potential claims against Tableau and valued the Asserted Patents at $0 in bankruptcy, while at the same time he tried to buy the supposedly worthless Asserted Patents for cheap and was admonished by the Trustee and bankruptcy court. See Tyz Decl., Ex. 14 at 3, Ex. 15 at 2, Ex. 16. He then turned around to sue Tableau and claim

hundreds of millions in damages for a period starting six months before Old iCharts filed for bankruptcy. Tyz Decl., Ex. 10 at 12.

It is not plausible that Mr. Duncker and Old iCharts did not know about the potential claims against Tableau. Rather, the reasonable inference is that Mr. Duncker purposefully hid the potential claims from the Trustee and bankruptcy court so that he and his wife could launder and exploit the Asserted Patents while avoiding the debts incurred by Old iCharts. Mr. Duncker's omissions not only misled the bankruptcy court and Trustee, but were designed to enrich himself at the expense of the creditors of his failed business. Judicial estoppel is designed to "protect the integrity of the bankruptcy process" and stop someone like Mr. Duncker from deceiving the bankruptcy court creditors "who rel[y] on the schedules." *See Hamilton*, 270 F.3d at 785.

This is why Old iCharts would have been estopped from asserting the undisclosed infringement claims against Tableau. In determining whether to apply estoppel, courts may consider whether (1) a later position is "clearly inconsistent" with an earlier one, (2) a court was persuaded to accept the earlier position, and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Hamilton*, 270 F.3d at 782 (9th Cir. 2001) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). All three are true here. (1) Mr. Duncker said there was no potential claim only to pursue the potential claim after bankruptcy, (2) the bankruptcy court relied on the omission when it confirmed the plan and abandoned the Asserted Patents as worthless, and (3) Mr. Duncker got an unfair advantage because he, rather than the estate of Old iCharts, was allowed to exploit the Asserted Patents. *See id.* at 784 ("[A] discharge of debt by a bankruptcy court . . . is sufficient acceptance to provide a basis for judicial estoppel."). This is why "a party [in a bankruptcy] is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.* (citing *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir.1992)); *see also Cannon-Stokes v. Potter*, 453 F.3d 446, 447 (7th Cir. 2006) ("All six appellate courts that have considered this question hold that a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the

bankruptcy ends.").

Plaintiff should be estopped from asserting the undisclosed infringement claims against Tableau based on Old iCharts and Mr. Duncker's failure to disclose them in bankruptcy. Courts have long held that legal consequences based on the acts of a patentee flow to a new assignee of a patent. *See, e.g.*, *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 931 (N.D. Cal. 2012) (collecting cases and noting that "it defies logic to suggest that . . . [a] successor's rights are enlarged so long as patent rights are transferred by a mechanism other than a license."). It is particularly equitable to estop Plaintiff because Mr. Duncker was the authorized representative of Old iCharts who hid the potential claims, and is now a principal of Plaintiff who stands to gain from his omission. *See* Dkt. 45-28 ¶ 1; Tyz Decl., Ex. 12 at 4. Further, Plaintiff claimed damages in this action from October 2017, before Old iCharts' 2018 bankruptcy petition, for hundreds of millions of dollars. *See* Tyz Decl., Ex. 10 at 12, Ex. 12 at 1.

Plaintiff was estopped and knew the Asserted Patents were acquired by Mr. Duncker for nothing after he concealed the potential claims against Tableau in bankruptcy. Thus, this case is exceptional and Plaintiff should never have brought these claims in the first place.

### ii.    Plaintiff Claims Should Not Have Been Brought in Texas

Also making this case stand out from the rest is Plaintiff's decision to file its Complaint thousands of miles from where its own principal resides. To compound matters, Plaintiff unreasonably opposed Tableau's motion to transfer to this District. <u>First</u>, Plaintiff relied on the unserious argument that venue was improper in NDCA, even though there was no genuine dispute that Tableau makes, uses, and sells the Accused Products in NDCA and that "[h]undreds of Tableau employees, including many of Tableau's executive officers, work at two physical offices in NDCA." Dkt. 61 at 13. <u>Second</u>, there were no private or public interest factors that favored WDTX. This was not a close call. Mr. Duncker is in NDCA. Dkt. 61 at 2. Old iCharts was founded in NDCA and remained in NDCA until it filed for bankruptcy in NDCA. *Id.* Tableau was founded in NDCA, has its engineering staff in NDCA and Seattle, and was acquired by NDCA-based company Salesforce. Dkt. 61 at 3. <u>Third</u>, Plaintiff's numerous ancillary motions, including motions to seek expedited venue discovery and strike Tableau's reply, unnecessarily

1    drove up the costs of litigation.  Plaintiff attempted to force relevant witnesses to travel hundreds

2    of miles, cross time zones, and stay away from their work, family, and community to testify in

3    WDTX.  Plaintiff's forum shopping in a far-flung forum—one that Plaintiff apparently deemed

4    more favorable, but was inconvenient for everyone and unnecessarily increased costs—is another

5    reason this case is exceptional.

6                     iii.    Plaintiff Had Exceptionally Weak Section 101 Arguments

7            Plaintiff's exceptionally weak arguments opposing Tableau's motion for judgment on the

8    pleadings under Section 101 is another reason the Court should shift fees.  Even after

9    supplemental briefing, Plaintiff "remain[ed] unable to point to a single line supporting its view

10   that the inventors improved Adobe Flash or used Adobe Flash in any way unconventionally."

11   Dkt. 118 at 7.  This was not a close case—as the Court's Order noted, Plaintiff barely made

12   arguments on several factors and the arguments that Plaintiff did make were exceptionally weak.

13   *See, e.g.*, *id.* at 8 ("Although iCharts mentions three dependent claims in two sentences, it does

14   not develop arguments based on them"), 10 (Plaintiff's argument "imagines limitations not in the

15   claim or claims" and "misses the point"), 10 (Plaintiff "wholly fails to cite to any particular

16   mechanism in the specification, let alone any in the claim language"), 10 ("This is not a close

17   call"), 13 (Plaintiff "pointed to no contrary citations in the specification or claims"), 15 ("iCharts

18   barely tries to persuade this order otherwise"), 19 ("iCharts does not specify what exactly was

19   'buil[t] on the concept of publishing'"), 20 ("Rather than specifically analyze the claim elements,

20   iCharts just restates them"), 21 ("iCharts barely mounts a response").

21          The Federal Circuit has upheld granting attorneys' fees "based on the weakness of

22   [defendants]'s § 101 arguments and the need to deter similarly weak arguments in the future."

23   *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377 (Fed. Cir. 2017).  In

24   *Inventor Holdings*, as here, "the only components disclosed in the specification for implementing

25   the asserted method claims are unambiguously described as 'conventional.'"  *Id.* at 1378.  The

26   Court should grant Tableau's reasonable attorneys' fees because the case is exceptional for the

27   same reason.  *See* Dkt. 118 at 1 (the "patent specifications acknowledge" supposed invention

28   "was achieved using conventional tools").

**C.    The Court Should Award Tableau's Reasonable Attorneys' Fees**

The following table contains Tableau's lodestar calculations for its reasonable attorneys' fees broken down by timekeeper:

| Lodestar Calculation | | | |
|---|---|---|---|
| **Timekeeper** | **Hours** | **Hourly Rate** | **Fees** |
| Ryan Tyz | 164.3 | $925 | $151,978 |
| Erin Jones | 964.9 | $830 | $800,867 |
| Udit Sood | 186.7 | $830 | $154,961 |
| Ciara McHale | 408.9 | $830 | $339,387 |
| Sean Apple | 246.4 | $685 | $168,784 |
| Xiaoyuan Zhang | 116.7 | $490 | $57,183 |
| John Giust | 188.5 | $450 | $84,825 |
| Wendy Akbar | 144.8 | $450 | $65,160 |
| Tiffany Weger | 64.6 | $320 | $20,672 |
| **TOTAL** | **2485.8** | | **$1,843,817** |

Tyz Decl. ¶ 32, Ex. 19. This calculation excludes time and fees for the IPR. *Id.* ¶ 32.

i.    Tyz Law Group's Rates Are Reasonable

Tyz Law Group's hourly rates are reasonable. One Court in this district has independently concluded that Tyz Law Group's rates were reasonable two years ago, and they are similar here adjusting for inflation and market changes. *See Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.*, No. 21-CV-06536, 2022 WL 1289048, at *2 n.1 (N.D. Cal. Apr. 29, 2022) (holding that Tyz Law Group's then hourly rates between $475–690 were reasonable); *see also Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, No. 21-CV-06536, 2024 WL 3697030, at *6 (N.D. Cal. Aug. 6, 2024) (later granting attorneys' fees for work from Tyz Law Group for the entire case through trial). These rates track and in many cases are below the rates charged by other attorneys with similar skill and experience in similar cases in their respective markets. Tyz Decl. ¶ 30. Tableau's attorneys all have experience that amply justifies their hourly rates, as detailed in the attached Declaration of Ryan Tyz. Tyz Decl. ¶¶ 21–29. Rates approved by other courts in this district support the rates charged here, as hourly rates on the order of $700–900 are modest in this District for attorneys of comparable experience. *See, e.g., Wynn v. Chanos*, No. 14-CV-04329, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015) (collecting cases and finding hourly rates of $1,085 for a partner with 40 years of experience, $920 for a partner with 20 years

of experience, and $710 for a 6th year associate to be "reasonable rates for attorneys in the Bay Area" in 2015). Indeed, Plaintiff's attorneys have sought fees in other cases at much higher rates. *See, e.g.*, Tyz Decl., Ex. 20 ¶ 11 (attorney for Plaintiff had an hourly rate of $1,020 in 2015). If Plaintiff disputes the reasonableness of Tyz Law Group's rates, it should submit the hourly rates of its attorneys.

### ii.    Tyz Law Group's Hours Spent Are Reasonable

As detailed in the Declaration of Ryan Tyz, Tableau was forced to spend time on its motion to transfer, motion for judgment on the pleadings, invalidity and noninfringement, and discovery. Reasonable fees are determined by the lodestar method by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983) (approving the lodestar method for calculating fees). Tableau's attorneys' billing records reflect a reasonable amount of time spent on this litigation. Tyz Decl. ¶ 33. <u>First</u>, these hours are reasonable based on the motion practice for the motion to transfer and motion for judgment on the pleadings, which were necessitated by Plaintiff's actions and won by Tableau. *Id.* <u>Second</u>, the hours are reasonable considering the factual and legal complexity of this case, and the parties' adherence to NDCA's patent local rules, which require the parties to put in the work "to crystallize their theories of the case early in the litigation." *See id.*; *LG Elecs. Inc. v. Q-Lity Comp. Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002). <u>Third</u>, the hours spent by Tableau's attorneys were reasonable considering the potential damages in this case, which Plaintiff estimated to be between "$250 million and $375 million." Tyz Decl. ¶ 33, Ex. 10 at 12. Thus, the hours spent by Tableau's attorneys were reasonable.

### iii.    The Court Should Hold Mr. Duncker Jointly and Severally Liable

The Court should hold Plaintiff and Mr. Duncker jointly and severally liable for Tableau's fees. The Court may hold an individual non-party liable under 35 U.S.C. § 285 if it finds that the individual's "personal conduct was the dominant cause" or "the driving force" making the case exceptional. *See Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 843–44, 852 (E.D. Tex. 2017); *see also Ohio Cellular Products Corp. v. Adams USA, Inc.*, 175 F.3d 1343, 1349–50 & n.6 (Fed. Cir. 1999); *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir.

1985) ("[A]n individual may be assessed fees under § 285 if his conduct supports a finding that the case is exceptional."). Here, Mr. Duncker's conduct is the driving force that makes this case so exceptional. He withheld the potential claim against Tableau in Old iCharts' bankruptcy so he could get the Asserted Patents for free, all before he created Plaintiff as a vehicle to exploit the Asserted Patents. The Court should join Mr. Duncker to this case and require him to respond in writing or at an evidentiary hearing.[1]

## III.    **CONCLUSION**

Tableau respectfully asks that the Court grant its attorneys' fees, join Mr. Duncker to this case, and find that he and Plaintiff are jointly and severally liable for those fees.

Respectfully submitted,
TYZ LAW GROUP PC

Dated: December 26, 2024

*/s/ Sean Apple*
Sean Apple

Attorneys for Defendant
Tableau Software, LLC

---

[1] The Supreme Court reversed *Ohio Cellular* in *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000), holding that simultaneously amending the judgment and pleadings to impose liability on Nelson violated due process. However, the substantive holding of *Ohio Cellular Products Corp. v. Adams USA, Inc.*, 175 F.3d 1343 (Fed. Cir. 1999) remains intact and joining Mr. Duncker and allowing him to respond to Tableau's Motion would afford him due process and avoid the issue in *Nelson*. *See Iris Connex*, 235 F. Supp. 3d 826, 843 n.5 (E.D. Tex. 2017).